# Hill, Fontaine & Co. *v.* Helton.

*Action of Assumpsit Against Commission Merchants.*

1. *Testimony of party as to transaction with, or statement by deceased person.*—To disqualify a party from testifying as a witness, "as to any transaction with, or statement by any deceased person, whose estate is interested in the result of the suit, or when such deceased person, at the time of such statement or transaction, acted in any representative or fiduciary relation whatsoever to the party against whom such testimony is offered" (Code, § 3058), "there must be an immediate conflict of interest involved in the issue to be tried—the effect of the evidence must be to diminish or enlarge the rights of the decedent's estate."

2. *Objections to evidence.*—When evidence is correctly admitted, as offered, though objected to, the subsequent introduction of other evidence can not render that ruling erroneous, but another objection must be interposed, based on such additional evidence.

3. *Proof of agency.*—The fact of agency may be proved by circumstances, and may be inferred from previous employment in similar acts or transactions, or from acts of such nature and so continuous as to furnish a reasonable basis of inference that they were known to the principal, and that he would not have allowed the agent to so act without authority; but the fact that the agent performed similar acts for other persons in the neighborhood, in and about the same business, does not authorize the inference that he was authorized to perform such acts as agent for plaintiff.

4. *Declarations of agent; admissibility of, as evidence against principal.*—The declarations of an agent, made during the continuance of the agency, and while in the discharge of his duties as agent, respecting a transaction then depending, and so contemporaneous with the main fact as to constitute a part of the *res gestæ*, are binding on the principal, and admissible as evidence against him; but this rule does not apply to declarations which are merely narrative of a past transaction, or which do not appear to relate to the subject of the particular agency.

5. *Extent of agent's authority.*—Authority to an agent to ship cotton, and forward the bills of lading to the consignees, does not include or imply authority to receive advances on the cotton from the consignees; and while authority to ship and sell may imply authority to receive the proceeds of sale, it does not confer authority to appropriate the proceeds of sale to the payment of the agent's individual debt.

6. *What constitutes payment of mortgage debt.*—Where a creditor, taking a mortgage from his debtor, assumes the payment of a prior mortgage on the property, but suffers it to be sold under that mortgage, becomes himself the purchaser at a sum sufficient to pay the debt, and pays the purchase money; this is a substantial performance of his promise, the first mortgage being satisfied in full.

APPEAL from Jackson Circuit Court.

Tried before the Hon. JAMES E. COBB.

Pleasant H. Helton sued out an attachment against Hill, Fontaine & Co., commission merchants, residing in Memphis,

VOL. LXXX.

[Hill, Fontaine & Co. v. Helton.]

Tenn., and executed the same by the service of writs of garnishment on certain creditors of the defendants residing in Jackson county, Ala. The plaintiff claimed of the defendants the proceeds of fourteen bales of cotton, sold by them on his account and which they failed to pay to him. The defendants appeared by counsel and defended the suit. The facts, as they appear in the record, are, that Helton brought fourteen bales of cotton to Stevenson, a station on the Memphis and Charleston railroad, in the winter of 1881-2, and delivered them to one Martin, the depot agent, with instructions to ship them in the name and for account of plaintiff, to Hill, Fontaine & Co., Memphis; that the cotton was so shipped, and its receipt acknowledged, as shown by the following letter, addressed to the agent of Helton, at Stevenson:

"Mr. R. A. Caffey, Stevenson, Ala., Memphis, Tenn., June 9th, 1882.

"Dear sir: We have received yours of the 8th inst., and have to say that we have in our hands (14) fourteen bales of cotton, shipped to us by J. H. Martin, in the name of P. H. Helton. None of same has as yet been sold.

"Respectfully.        Hill, Fontaine & Co."

The plaintiff testified on the trial of the cause, that at the time he delivered the cotton to Martin, he, plaintiff, requested Martin to ship the cotton to Hill, Fontaine & Co., and to write them that he, Helton, would instruct them when to sell, and not to sell till he, Helton, instructed them. Defendants objected to this part of plaintiff's testimony as violative of § 3058 of the Code of 1876, the said Martin being dead, and moved to exclude it. The court allowed the witness to testify, and refused to exclude. In response to the demand of plaintiff for the proceeds of this cotton, Hill, Fontaine & Co. claimed that they had paid the said Martin for it, with whom they had an account for money advanced by them to Martin on shipments of cotton made by him, and sought to show that Martin was the agent of the plaintiff to control the sale and proceeds of the cotton in controversy, by introducing evidence that other parties at Stevenson were accustomed to entrust the sale and management of the proceeds of their cotton to Martin, and that defendants had been accustomed to settle with Martin. To this mode of establishing the agency of Martin to dispose of plaintiff's cotton, plaintiff objected, and the court sustained the objection. The defendants further sought to show that the plaintiff had been paid for the cotton in question, by Martin; and for this purpose offered a mortgage executed by Martin and his wife to R. A. Caffey, John P. Timberlake and the plaintiff, to secure an indebtedness of two thousand dollars to each of said parties, said mortgage bearing

34

date May 30th, 1882, claiming that the two thousand dollars stated to be owing to the plaintiff, embraced the amount of the proceeds of the cotton Martin had shipped for him. This was denied by Helton, who introduced evidence to show the consideration of the mortgage debt. The defendants offered in evidence a number of letters, written by Martin, in reference to this cotton, for the purpose of showing his agency of the plaintiff, but upon objection of plaintiff they were excluded from the jury, whereupon the defendants excepted. The defendants asked the following written charges: 1. "If the jury find from the evidence that J. F. Martin was engaged in the business of shipping cotton, not as depot agent, and that Helton placed the fourteen bales of cotton in his possession and also placed in his possession or left with him the bills of lading for said cotton and that said cotton was shipped to Hill, Fontaine & Co., by J. F. Martin as Helton's agent, and that the bills of lading were also sent by said Martin to Hill, Fontaine & Co., and that said defendants, in good faith, and in ignorance of the fact (if it be a fact) that Martin was not duly authorized to sell the cotton, advanced to Martin the full value of the cotton, then their verdict must be for the defendants." 2. "If the jury find that J. F. Martin was the agent of P. H. Helton for the purpose of shipping and selling the fourteen bales of cotton, and that Hill, Fontaine & Co., paid Martin in full for said cotton, then their verdict must be for the defendants." 3. "If Helton agreed, as part consideration of the mortgage that he, Helton, would pay his part of the Hurt mortgage, being a claim of seven hundred dollars, and that said Helton never paid said mortgage but suffered said mortgage to be foreclosed, and bought the mortgaged land at the sale, this would not be a payment of the mortgage, and not a payment of the seven hundred dollars." The court refused to give each of these charges, and the defendants excepted. There was a verdict for the plaintiff, and the defendants take this appeal, assigning as error the various adverse rulings of the court upon questions of evidence excepted to, and the refusal to give the foregoing charges.

D. D. SHELBY, and R. W. WALKER, for appellants—1. The court erred in excluding the letters written by Martin while acting as agent for Helton, relating to this cotton, and tending to establish, by his admissions, that he had authority from Helton to control the sale of the cotton. Such admissions of the agent are binding on his principal —2 Wharton on Evidence, § 1173, *note*; 1 Gr. Ev. §§ 113–114; *Danner v. Ins. Company*, 77 Ala. 188; *Ala. G. S. Rd. Co. v. Hawk*, 72 Ala. 117. 2. The question whether Martin was or was not Helton's agent, to receive

[Hill, Fontaine & Co. v. Helton.]

pay for the cotton, was a fact for the determination of the jury, when sought to be established by parol proof.— *Womack v. Reed*, 63 Ala. 500.    The plaintiff's theory was that he dealt with Martin only as depot agent.    The defendants claimed, and sought to show, that he dealt with him as an agent engaged in the shipment of cotton, and with that purpose offered evidence that Martin was engaged in the shipment of cotton to commission merchants and acting as shipper and collector. This they were not permitted by the court to do.—Stephens' Dig. Ev. p. 20 Art. 13.    3. Fontaine testified that Martin was engaged in the business of shipping cotton and getting advances thereon, and controlling the shipments which were often in the names of third parties.    This being in evidence it was competent to show by another witness a general knowledge of such dealing, in the neighborhood, as tending to trace notice thereof to Helton.—*Hodges Bros. v. Coleman*, 76 Ala. 114; 2 Brick. Dig. p. 847.

J. E. Brown, and R. C. Brickell, *contra*.—The statute (Code, 1876, § 3058) excludes a party from testifying to statements by, or transactions with, a person deceased, only in two contingencies; first, when the estate of such deceased person is interested in the result of the suit; second, when, at the time of such statement or transaction such deceased person was acting in a representative or fiduciary relation to the party against whom such testimony is sought to be introduced. Neither of these contingencies exist in the present case. 2. Before the acts, declarations or admissions of one professing to be the agent or acting for another, can be received as evidence to affect the supposed principal, the authority or agency of the former must be shown *aliunde;* it is not to be inferred from the acts, declarations or admissions.—Whart. Agen. § 153; 1 Brick. Dig. 54–9; *Wright v. Evans*, 53 Ala. 103; *Galbreath v. Cole*, 61 Ala. 139.    That Martin blended with his relation of depot agent the business of shipping cotton as agent of planters shipping from the depot, and that the fact was notorious in the neighborhood, and known to Helton, had no tendency to prove that the plaintiff had entrusted him with the shipment of this cotton, or authorized him to receive the proceeds of its sale, or to apply the proceeds in the payment of his debt.—*Fisher v. Campbell*, 9 Port. 210 ; *Blevens v. Pope*, 7 Ala. 371; *Grant v. Cole*, 8 Ala. 519.    3. One who deals with an agent is bound, at his peril, to ascertain the extent of his authority.—1 Brick. Dig. p. 55, § 35 ; *Cummins v. Beaumont*, 68 Ala. 204. 4. The authority to Martin to ship the cotton in the name of Helton, and for that purpose being entrusted with the bill of lading, showing the ownership of Helton, would not authorize the de-

[Hill, Fontaine & Co. v. Helton.]

fendants to advance Martin money and hold Helton's cotton for such advance.—*Lane v. Davis*, 25 Ala. 335; *Bott v. Mc-Coy*, 20 Ala. 578; *Voss v. Robertson*, 46 Ala. 483; *Moore v. Robinson*, 62 Ala. 537. 5. The mere possession of a bill of lading, not in any manner transferred or endorsed, is not evidence of the ownership of goods.—*Lickbarrow v. Mason*, 1 Smith L. C. 1141 (Am. Note 1190); *Voss v. Robertson*, 46 Ala. 483.

CLOPTON, J.—The appellee brings this suit to recover the proceeds of cotton, which was sold by the appellants as commission merchants. There seems to be no controversy as to the ownership or sale of the cotton. The disputed question is, in what capacity did Johnson Martin, to whom defendants accounted for the proceeds, act—whether he shipped the cotton, merely as depot agent, or whether as agent of the plaintiff under an arrangement between the defendant and Martin, by which they advanced him money to control the shipments of cotton?

The plaintiff was allowed, against the objection of defendants, to prove by his own testimony, the instructions in regard to the sale of the cotton, which he requested Martin to write the defendants, and his agreement to ship it accordingly. Martin was dead at the time of the trial. The statute abrogates, in civil suits and proceedings, the common law rule, which excludes a witness, because he is a party, or interested in the issue tried, with a limitation, " that neither party shall be allowed to testify against the other, as to any transaction with, or statement by, any deceased person whose estate is interested in the result of such suit, or when such deceased person, at the time of such statement or transaction, acted in any representative or fiduciary relation whatsoever to the party against whom such testimony is sought to be introduced."—Code, 1876, § 3058. The purpose of the limitation is, to exclude a party to the transaction or statement from rendering it in his own interest after the death of the other party. It is not an interest in the judgment as evidence, which disqualifies a party as a witness; but a direct and immediate conflict of interest involved in the issue to be tried. The effect of the evidence must be to diminish or enlarge the rights of the decedent's estate. The presumption being in favor of competency, it is incumbent on the party affirming the incompetency of the witness to show, that the testimony, sought to be introduced, falls within the statutory exclusion.—*Ala. Gold Life Ins. Co. v. Sledge*, 62 Ala. 566; *Hendricks v. Kelly*, 64 Ala. 388; *Dismukes v. Tolson*, 67 Ala. 386.

At the time the objection to the testimony was made and

ruled on, it did not appear, nor was it proposed to show, that Martin's estate had any interest in the result of the suit, or that he had sustained any representative or fiduciary relation to the defendants. We can not consider the evidence subsequently introduced, for the purpose of putting the court in error as to a previous ruling, which was not erroneous when made, as the case then appeared. If it be conceded, that the incompetency of the plaintiff, to testify to a transaction with, or statement by Martin, was disclosed by the evidence subsequently introduced, the objection should have been made in the Circuit Court by a motion to exclude, based on such evidence. It was not the duty of the court, *ex mero motu*, to exclude the testimony.

Agency, like any other controvertible fact, may be proved by circumstances. It may be inferred from previous employment in similar acts or transactions; or from acts of such nature, and so continuous, as to furnish a reasonable basis of inference, that they were known to the principal, and that he would not have allowed the agent so to act unless authorized. In such cases, the acts or transactions are admissible to prove agency. But in order to be relevant, the alleged principal must, in some way, directly or indirecly, be connected with the circumstances. The agent must have assumed to represent the principal, and to have preformed the acts in his name and on his hehalf. The testimony of the witness, Allison, tended to prove nothing more, than that Martin was engaged in the business of shipping the cotton of planters in the neighborhood of Stevenson other than the plaintiff, and receiving and controlling the proceeds, and that this was generally known. It is not pretended, that he had previously shipped or controlled any cotton, as agent of the plaintiff. From the facts, that Martin was engaged in the business of shipping cotton, separate from his duties of depot agent, and had controlled the cotton of other planters, it does not follow, and can not be reasonably inferred, that the plaintiff authorized him to ship and control the cotton in question as his agent. Acts done by Martin as the agent of *other* planters are not admissible and relevant to prove agency in the particular shipment of the plaintiff's cotton, in the absence of other evidence of authority, express or implied from circumstances, furnishing a ground of reasonable inference of assent, adoption, or acquiescence:—*Fisher v. Campbell*, 9 Por. 220.

The declarations and admissions of an agent are admissible against, and bind his principal, when made during the continuance of the agency, and while in the discharge of his duties as such, respecting a transaction then depending, and so contemporaneous with the main fact, or subject of the agency,

[Hill, Fontaine & Co. v. Helton.]

as to constitute a part of the *res gestæ.* "The rule admitting the declarations of an agent is founded upon the legal identity of the agent and the principal; and therefore they bind only so far as there is authority to make them." Declarations, mere narrations of past occurrences, are not admissible.—*Danner L. & N. Co. v. Stonewall Ins. Co.,* 77 Ala. 184; Whar. Ev. § 1173; 1 Greenl. Ev. §§ 113, 114. Preliminary proof of authority to make the declarations is requisite to their admissibility and binding effect. The letters and written statements of Martin, offered by the defendants, are but his declarations. The evident purpose of their introduction was to show either the agency and the extent of authority, or a purchase of the cotton and payment thereof. They are not admissible for either purpose. Agency and the extent of authority must be established by evidence, other than the acts and statements of the supposed agent. None of the letters or statements *prima facie* represent any transaction performed by Martin as agent of the plaintiff, and while in the discharge of his duties as such agent. With two exceptions, none of them allude to the cotton in controversy; and those, which make any reference to it are narratives of past occurrences, and declarations of a purchase and payment. They do not come within the rule of admissibility.

By the first charge, the defendants requested the court to instruct the jury substantially, that they are exempted from liability to the plaintiff, if he placed the cotton and the bills of lading in the possession of Martin, and Martin shipped the cotton to the defendants, and sent them the bills of lading, and thereupon they in good faith and in ignorance of Martin's want of authority to sell the cotton, advanced to him its value, though the extent of his authority was to ship, and send the bills of lading, to the defendants. We presume, the proposition of the charge is founded on the principle, that on the facts stated, the defendants are *bona fide* purchasers without notice. Without considering the negotiable character of a bill of lading, or to what extent the doctrine of *bona fide* purchasers applies to such instrument, it suffices, that the bills of lading show on their face, that the cotton was received from the plaintiff by Martin as agent, presumptively for transportation, and was consigned to the defendants. Mere possession of them, and their transmission by Martin to the defendants, under the circumstances, did not authorize them to infer, that he had any right to the cotton, or any authority to receive advances on it. The bills of lading were forwarded to the defendants, who were the proper holders, and constituted their authority to receive the cotton. Inquiry into the true character of the transaction is not precluded, because they may have

ignorantly and in good faith advanced money to Martin.—*Pollard v. Vinton*, 105 U. S. 7. The instruction, however, does not rest the exemption from liability on apparent ownership arising from possession, but on the ground of an agency to ship, and forward the bills of lading. In this respect, the charge ignores the settled rule, that mere ignorance of want of authority is not sufficient to protect a party dealing with an agent, though he may have innocently paid value. He is bound at his peril to ascertain the extent of authority. Agency to ship the cotton, and forward the bills of lading to the consignees, does not purport to carry authority to receive advances on the cotton. Such agency and the authority of the agent terminate, when the cotton is shipped and the bills of lading are forwarded.

The only mode, in which it is claimed that defendants paid Martin for the cotton is, by crediting the proceeds of sale in his account for money advanced on this and other cotton to enable him to control shipments. While an agency to ship and sell may imply authority to receive the proceeds of sale, it will not extend to authority to appropriate such proceeds to the payment of an individual indebtedness of the agent. The jury might have inferred from the second charge requested by the defendants, when referred to the evidence, that a payment in such manner would bind the plaintiff. The charge is calculated to mislead.

The third charge is abstract, and asserts an incorrect proposition of law. Though the plaintiff may have agreed, as part consideration of the mortgage executed in May, 1882, by Martin, to pay a mortgage to Hurst, which was a prior incumbrance on the property, a branch of such agreement would not constitute a valid defence to the present suit. If the plaintiff, instead of a voluntary payment of the mortgage debt to Hurst, suffered a foreclosure for some real or supposed necessity to protect and quiet his title, and purchased the property at the foreclosure sale for an amount sufficient to pay the debt, and paid the purchase money, the debt is discharged and the mortgage satisfied—there is a substantial performance of the agreement. The mortgagor's equity of redemption under the second mortgage would not be defeated or impaired.

Affirmed.